*815 CLAY, J., delivered the opinion of the court in which DONALD, J., joined. KETHLEDGE, J. (pp. 823-25), delivered a separate dissenting opinion.
OPINION
CLAY, Circuit Judge.
Plaintiffs Wayside Church, Myron Stahl, and Henderson Hodgens (collectively “Plaintiffs”) appeal the district court’s order granting Defendants’ motion to dismiss the complaint, which asserted that Defendant Van Burén County and its Treasurer, Defendant Karen Makay (collectively “Defendants”), violated Plaintiffs’ Fifth Amendment rights by taking their property without just compensation. Defendants filed a cross-appeal arguing that the district court erred in determining that it could exercise jurisdiction over this case. For the reasons set forth below, we VACATE the judgment of the district court and REMAND with instructions to DISMISS the case for lack of subject matter jurisdiction.
BACKGROUND
Plaintiffs each owned real property in Van Burén County, Michigan in 2011 but failed to pay property taxes for that year. On March 1, 2012, pursuant to the General Property Tax Act (the “GPTA”), Mich. Comp. Laws § 211.1 et seq., these properties became subject to forfeiture and foreclosure. On April 24, 2014, the Van Burén County Circuit Court issued a foreclosure judgment,, and title to these properties passed in fee simple absolute to the Defendant County.[1] A few months later, Defendant Makay, the treasurer for the Defendant County, sold these properties at an auction, pursuant to Michigan Compiled Laws § 211.78m. The minimum bid for each of the properties was calculated by totaling “[a]ll delinquent taxes, interest, penalties, and fees due on the property” plus the “expenses of administering the sale, including all preparations for the sale.” Mich. Comp. Laws § 211.78m(16)(a). Plaintiff Wayside Church’s former property had a minimum bid of $16,750, but at the public auction held on August 5, 2014, the property was sold for $206,000, meaning Defendant Van Burén County received surplus proceeds of $189,250. The minimum bid for the property formerly owned by Plaintiff Stahl was $25,000, but the property was sold at the same auction for $68,750, resulting in a surplus of $43,750. Finally, the property that had once been owned by Plaintiff Hodgens required a minimum bid of $5,900, but was sold for $47,750 at the same auction, meaning the Defendant County received $41,850 in surplus proceeds. .
In this suit, Plaintiffs seek return of the surplus funds because they allegedly possessed a cognizable property interest in each of their foreclosed properties and in the surplus proceeds generated by the sales, in connection with which Defendants were required to pay just compensation pursuant to the Fifth Amendment. Plaintiffs did not seek to challenge the process by which these asserted interests were taken; instead, Plaintiffs sought a declaratory judgment from the district court that, by not returning the surplus funds to the former owner-Plaintiffs, Defendants effectuated a taking without just compensation in violation of the Fifth Amendment.
*816 On December 11, 2014, Plaintiffs initiated this suit in federal court by filing a complaint against Defendants asserting the following claims: Count I asserted that Defendants violated Plaintiffs’ rights under the Fifth Amendment by taking their property without just compensation; Count II asserted that Plaintiffs were entitled to monetary damages, pursuant to 42 U.S.C. § 1983, for the violation of their Takings Clause rights alleged in Count I; and Count III sought a declaratory judgment that the Michigan Circuit Court failed to enter judgment in accordance with a state statute and, thus, that the redemption period should have been tolled. In addition to asserting these claims against Defendants on their own behalf, Plaintiffs also sought to represent a class of former Michigan property owners who had lost title to their property for non-payment of taxes but whose former properties were sold for significantly more than the taxes owed.
On January 7, 2016, Defendants filed a motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), respectively. On November 9, 2015, the district court issued an opinion denying the motion to dismiss for lack of subject matter jurisdiction but granting the motion for failure to state a claim.[2]
Plaintiffs filed a timely appeal on November 30, 2015, arguing that the district court erred in dismissing its claims pursuant to Rule 12(b)(6). This appeal was docketed as No. 15-2463. On December 9, 2015, Defendants filed a cross-appeal, docketed as No. 15-2525, challenging the district court’s order denying its motion to dismiss for lack of jurisdiction.
DISCUSSION
We are “bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.” Moir v. Greater Cleveland Reg’l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).
A. Standard of Review
“Article III of the Constitution confines the federal courts to adjudicating actual ‘cases’ and ‘controversies.’” Nat’l Rifle Ass’n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997) (citing U.S. Const, art. Ill, § 2). This command requires us to dismiss cases that are not ripe for review. “Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.” Arnett v. Myers, 281 F.3d 552, 562 (6th Cir. 2002) (quoting Bigelow v. Mich. Dep’t of Nat. Res., 970 F.2d 154, 157 (6th Cir. 1992)).
“Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ‘come in two varieties: a facial attack or a factual attack.’ ” Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 440 (6th Cir. 2012) (quoting Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)). “A facial attack on the subject-matter jurisdiction” — like the one Defendants make here — “questions merely the sufficiency of the pleading.” Gentek Bldg. Prods., Inc., 491 F.3d at 330 (citing Ohio Nat’l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). “When reviewing a facial attack, a district court takes the allegations in the complaint as true,” just as in a Rule 12(b)(6) motion. Id. (citing Ohio Nat’l Life *817 Ins. Co., 922 F.2d at 325). This Court reviews facial challenges to subject matter jurisdiction de novo. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004) (citing Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc., 362 F.3d 877, 880 (6th Cir. 2004)).
A factual attack, on the other hand, raises a factual controversy requiring the district court to “weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.” Gentek Bldg. Prods., Inc., 491 F.3d at 330 (citing Ohio Nat'l Life Ins. Co., 922 F.2d at 325). “Where a trial court’s ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court’s factual findings unless they are clearly erroneous.” RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1135 (6th Cir. 1996) (citing Ohio Nat’l Life Ins. Co., 922 F.2d at 326) (additional citations omitted). “However, review of the district court’s application of the law to the facts is de novo.” Id. (citing Ynclan v. Dep’t of Air Force, 943 F.2d 1388, 1390 (5th Cir. 1991); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)).
Because the district court treated the challenge as a facial attack and made no factual findings in reaching its decision, the appeal is treated the same way. See DLX, Inc., 381 F.3d at 516. This Court thus reviews the judgment of the district court de novo. Moreover “where subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the plaintiff has the burden of proving jurisdiction in order to survive the motion.” Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986).
B. Analysis
Defendants argue that we lack jurisdiction for two reasons: (1) Plaintiffs’ claims are not ripe for review; and (2) the Tax Injunction Act and principles of comity prevent jurisdiction from being exercised in federal court. We address these arguments in turn below.
1. Ripeness of Takings Clause Claims
“Applicable to the States through the Fourteenth Amendment, the Takings Clause of the Fifth Amendment ‘provides that private property shall not be taken for public use, without just compensation.’ ” Wilkins v. Daniels, 744 F.3d 409, 416 (6th Cir. 2014) (quoting Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)). “As its text makes plain, the Takings Clause ‘does not prohibit the taking of private property, but instead places a condition on the exercise of that power.’” Lingle, 544 U.S. at 536, 125 S.Ct. 2074 (quoting First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles, 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). The Takings Clause’s purpose is “not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.” Id. at 537, 125 S.Ct. 2074 (quoting First English Evangelical Lutheran Church of Glendale, 482 U.S. at 315, 107 S.Ct. 2378). Consequently, “a State does not violate the Takings Clause ‘until it refuses to compensate the owner.’” Wilkins, 744 F.3d at 417 (quoting Hensley v. City of Columbus, 557 F.3d 693, 695-96 (6th Cir. 2009)). Such compensation is not required to be “paid in advance of, or contemporaneously with, the taking.” Williamson Cty. Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Therefore, a takings claim is not ripe “unless or until the State fails to provide an adequate postdepriv'ation remedy for the property loss.” Id. at 195, 105 S.Ct. 3108 (quoting Hudson v. Palmer, 468 *818 U.S. 517, 532 n.12, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).
In Williamson County, the Supreme Court established a two part test to determine when a takings claim is ripe. “A federal court may hear a takings claim only after: (1) the plaintiff has received a ‘final decision’ from the relevant government actor; and (2) the plaintiff has sought ‘compensation through the procedures the State has provided for doing so.’ ” Wilkins, 744 F.3d at 417 (quoting Williamson Cty., 473 U.S. at 186, 194-95, 105 S.Ct. 3108). For plaintiffs to be obligated to seek redress in the state courts before litigating in federal court, the state procedures must be “reasonable, certain, and adequate ... at the time of the. taking.” Williamson Cty., 473 U.S. at 194, 105 S.Ct. 3108 (quotation omitted).
This Court has previously acknowledged that the Williamson County test is not strictly jurisdictional but only “prudential,” and need not be followed “when its application ‘would not accord with sound process.’ ”[3] Miles Christi Religious Order v. Twp. of Northville, 629 F.3d 533, 541 (6th Cir. 2010) (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1012, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). However, the requirement that aggrieved parties first seek compensation for the alleged taking in state court before bringing suit in federal court “will often serve important federalism interests.” Wilkins, 744 F.3d at 418. These interests are especially strong where, as here, the case “turn[s] on whether the plaintiff has a property interest as defined by state law.” Id. Therefore, we engage in the Williamson County analysis to determine whether jurisdiction is proper. See Miles Christi Religious Order, 629 F.3d at 541 (continuing to follow Williamson County test after acknowledging that it is not jurisdictional because the Court “fail[ed] to see why this prudential requirement should be ignored here”).
Defendants do not contest here that the first part of the test is satisfied and, instead, only appeal the district court’s determination that no adequate state procedures existed in which Plaintiffs could challenge the alleged taking. Defendants claim, as they did before the district court, that Plaintiffs could have challenged the tax law on constitutional grounds in state court or brought an inverse condemnation action. The district court, however, found that such avenues of relief were foreclosed by the text of the GPTA.
Specifically at issue is the provision in the GPTA that addresses actions seeking monetary damages after foreclosure, codified as Michigan Compiled Laws § 211.78L This section provides as follows:
If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a parcel of property are extinguished as provided in section 78k, the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive any notice required under this act shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this section.
Mich. Comp. Laws § 211.78i(l). These actions must be brought in a special court, called the Court of Claims, as “[t]he court of claims has original and exclusive jurisdiction in any action to recover monetary damages under this section.” Id. § 211.78i(2). That court, however, cannot hear actions brought against the state of Michigan or any arm thereof if the elaim- *819 ant “has an adequate remedy upon his claim in the federal courts.” Id. § 600.6440. Therefore, according to Plaintiffs, there is no adequate state forum for their claims, as they are required to seek redress in the Court of Claims; but that court cannot hear cases where a federal remedy exists. Consequently, Plaintiffs contend that federal court is the only forum where they can seek relief.
The district court agreed with Plaintiffs and found that “the only cause of action permitted by the GPTA is one for lack of notice (due process); specifically, the law allows a cause of action against a county treasurer for monetary damages only when a property owner ‘claims that he or she did not receive any notice required under this act.’ ” (R. 38, PagelD #409 (quoting Mich. Comp. Laws § 211.78Í).) The court went on to note that the Court of Claims was the only court that could hear any challenges to the GPTA, but that federal claims were barred in that forúm. The district court concluded that because the “Michigan Court of Claims has exclusive and original jurisdiction over claims under the GPTA against the County Treasurer,” and because “Michigan absolutely divests jurisdiction from the Michigan Court of Claims where a plaintiff ‘has an adequate remedy upon his claim in the federal courts,’ ” the state had failed to provide an adequate remedy. (Id. at 410 (quoting Mich. Comp. Laws § 600.6440).) Based on this analysis, the court concluded that the claim was ripe for review under the Williamson County test.
This analysis, however, suffers from two fatal flaws. First, and most importantly, in reading the above quoted section, the district court read subsection (1) to bar all actions challenging the GPTA except those challenging the notice procedures. However, the plain language of the text does not require such a restrictive reading. Instead, the statute limits a plaintiff to monetary damages when two conditions are present: (1) the former owner’s rights have been extinguished by foreclosure proceedings for failure to pay property taxes; and (2) the former owner is challenging whether he received the notice required by other provisions in the GPTA. While the first condition is undoubtedly present in the case at bar, Plaintiffs here have stated explicitly that they are not challenging the notice provided to them, either on statutory or constitutional grounds. Because Plaintiffs’ Takings Clause claim does not meet both criteria, the restrictions on relief do not apply to this action.
Second, the district court erred in determining that the Court of Claims has exclusive jurisdiction over all claims challenging the GPTA. In arriving at that conclusion, the court conflated the terms “section” and “act.” It is clear from the text that the Michigan legislature used the term “act” to refer to the entire GPTA and the term “section” to refer to the more specific provisions in the act. For example, in providing definitions for the GPTA, the text states that “[a]s used in this section and sections 78a through 155 ... (a) ‘Foreclosing governmental unit’ means ... [t]he treasurer of a county.” Mich. Comp. Laws § 211.78(8). This language makes clear that “section” refers to individual parts of the general statute, and not the entire GPTA. See also id. § 211.78Í (“If a judgment for foreclosure is entered under section 78k,.... ”). By contrast, when referring to the entire statutory scheme, the legislature clearly indicated so, as seen in the provision regarding the purpose of the GPTA, which states, “Therefore, the powers granted in this act relating to the return of property for delinquent taxes constitute the performance by this state or a political subdivision of this state of essential public purposes and functions.” Id. § 211.78(1).
*820 By the plain reading of the language at issue in this case, then, it is apparent that the word “section” in the phrase limiting jurisdiction to the Court of Claims — “The court of claims has original and exclusive jurisdiction in any action ... under this section” — the legislature was limiting jurisdiction for claims brought pursuant to § 211.78Í, not claims brought pursuant to the entire GPTA. As established above, § 211.781 only discusses claims by former owners challenging the notice provisions, which is not the case here. Therefore, Plaintiffs were not required to bring their actions in the Court of Claims and therefore were not subject to the bar that “[n]o claimant may be permitted to file claim in [the Court of Claims] against the state nor any department, ... arm or agency thereof who has an adequate remedy upon his claim in the federal courts.” Id. § 600.6440. Consequently, the district court erred in concluding that the GPTA provided no remedy for Plaintiffs’ constitutional claims.
Moreover, reading the statute in the way directed by the district court would mean the statute would be unconstitutional, which would violate the constitutional avoidance statutory construction rule. See Carey v. South Dakota, 250 U.S. 118, 122, 39 S.Ct. 403, 63 L.Ed. 886 (1919) (“Where a statute is reasonably susceptible of two interpretations, by one of which it would be clearly constitutional and by the other of which its constitutionality would be doubtful, the former construction should be adopted.” (citations omitted)); see also In re Treasurer of Wayne Cty. for Foreclosure, 478 Mich. 1, 732 N.W.2d 458, 462 (2007) (requiring courts to “presume a statute is constitutional and construe it as such, unless the only proper construction renders the statute unconstitutional” (citation omitted)). If the district court were right in its interpretation, the Michigan legislature would have created a statutory scheme by which plaintiffs were barred from asserting all but one federal right— due process notice — in state court. Such a scheme could not stand, as “[a] jurisdictional rule cannot be used as a device to undermine federal law, no matter how evenhanded it may appear.” Haywood v. Drown, 556 U.S. 729, 739, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009); see also Felder v. Casey, 487 U.S. 131, 138, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (“Under the Supremacy Clause of the Federal Constitution, ‘[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,’ for ‘any state law, however clearly within a State’s acknowledged power, which interferes with or is contrary to federal law, must yield.’ ” (quoting Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962))). The Michigan Supreme Court also recognized the same limitation when discussing § 211.78Í of the GPTA, and held that, in the context of a due process claim to the statute, “[b]ecause the Legislature cannot create a statutory regime that allows for constitutional violations with no recourse, that portion of the statute ... is unconstitutional and unenforceable.” In re Treasurer of Wayne Cty., 732 N.W.2d at 463. We therefore conclude that § 211.78Z of the GPTA does not bar Plaintiffs from filing their Takings Clause claims in state court.
Pursuant to Williamson County, we still must determine whether Plaintiffs are generally allowed to bring their Takings Clause and § 1983 claims in Michigan state court, independent of § 211.781 of the GPTA, or whether there were no “reasonable, certain, and adequate” procedures for challenging a taking, thereby allowing Plaintiffs to seek redress in federal court first. The Michigan Court of Appeals has previously held that “[t]he Court of Claims is the proper forum in which to seek redress where a plaintiff alleges an already accomplished inverse condemnation by the State of Michigan.” Lim v. Mich. Dep’t of *821 Transp., 167 Mich.App. 751, 423 N.W.2d 343, 345 (1988) (citing Hill v. State Highway Comm’n, 382 Mich. 398, 170 N.W.2d 18 (1969)) (additional citations omitted). Jurisdiction would normally lie in that court as it has exclusive jurisdiction over all claims “statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief ... against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.” Mich. Comp. Laws § 600.6419(l)(a).
Plaintiffs’ action, however, is not an action against the State of Michigan. Instead, Plaintiffs have sued Van Burén County and the county treasurer, as the county treasurer is the one responsible for effectuating the alleged taking of Plaintiffs’ properties. See Mich. Comp. Laws §§ 211.78(8)(a), 211.78k(5). (See also R.16-2, Judgment & Order of Judicial Forfeiture, PagelD #181-82.) Counties, however, “are never within the jurisdiction of the Court of Claims.” Doan v. Kellogg Cmty. Coll., 80 Mich.App. 316, 263 N.W.2d 357, 359 (1977); see also Cameron v. Monroe Cty. Probate Court, 457 Mich. 423, 579 N.W.2d 859, 862 (1998) (determining that the circuit court had jurisdiction over a complaint against a county court because “[t]he state was not made a party to the complaint, nor did the court attempt to order the state to pay the complaint”). Thus, Lim is inapplicable to Plaintiffs’ case and does not require them to file in the Court of Claims. See Lim, 423 N.W.2d at 345.
Furthermore, the argument that the Michigan jurisdictional scheme essentially requires that all claims against political subdivisions of the state be litigated in federal court when there is an adequate federal remedy ignores the Michigan state courts’ interpretation of its own jurisdictional statutes. In Gordon v. Sadasivan, 144 Mich.App. 113, 373 N.W.2d 258 (1985) (per curiam), the Court of Appeals of Michigan addressed the situation where a circuit court dismissed a suit brought pursuant to § 1983 for lack of jurisdiction, as it thought the case belonged in the Court of Claims. Id. at 259-60. The Gordon court first recognized that “state courts exercise concurrent jurisdiction over § 1983 claims.” Id. at 261. After determining that there was an adequate remedy that the plaintiff could have pursued in federal court, as his claim was not barred by the Eleventh Amendment, the Michigan Court of Appeals determined that the Court of Claims lacked subject matter jurisdiction over the claim pursuant to Michigan Compiled Laws § 600.6440. Id. However, the court further determined that the circuit court did, in fact, have jurisdiction over the plaintiffs § 1983 claims. Id. Put another way, the Gordon court noted that, while § 600.6440 may divest the Court of Claims of jurisdiction when there is a remedy available in federal court, the result is not that no remedy can be sought in state court; instead, the proper forum to litigate such claims is the circuit court.[4] Id. Based on this interpretation of the relevant jurisdictional statutes, we find that Plaintiffs were not barred from bringing their actions in the state circuit court and thus were not deprived of a state forum for vindicating their federal constitutional rights.
*822 Because the clearer reading of the relevant statutes allows Plaintiffs to bring their cases, including their federal claims, in state court, and because this Court is required to read statutes to be constitutional if possible, we conclude that Plaintiffs have failed to establish that jurisdiction in federal court is proper because the state provided no “reasonable, certain and adequate [procedures] at the time of the taking.” Williamson Cty., 473 U.S. at 194, 105 S.Ct. 3108 (quotation omitted). The district court thus erred in finding that it had jurisdiction to entertain this action.
2. Tax Injunction Act and Comity
The district court also determined that the Tax Injunction Act does not bar jurisdiction here. That Act declares that “[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.” 28 U.S.C. § 1341. This statute is jurisdictional, Hedgepeth v. Tennessee, 215 F.3d 608, 611-12 & n.4 (6th Cir. 2000), and prevents federal courts from awarding declaratory or injunctive relief to plaintiffs who challenge state tax laws. Nat’l Private Truck Council, Inc. v. Okla. Tax Comm’n, 515 U.S. 582, 586-87, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995).
Another similar but distinct limitation on federal court jurisdiction over challenges to state tax laws is the principle of comity. This principle “prohibits ‘taxpayers ... from asserting § 1983 actions against the validity of state tax systems in [the lower] federal courts.’ ” Chippewa Trading Co. v. Cox, 365 F.3d 538, 541 (6th Cir. 2004) (alterations in original) (quoting Fair Assessment in Real Estate Ass’n, Inc. v. McNary, 454 U.S. 100, 116, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981)). “While this comity principle reflects some of the same concerns that led Congress to enact the Tax Injunction Act, 28 U.S.C. § 1341, it stands on its own bottom, and extends to cases seeking monetary damages as well as injunctive or other equitable relief.” Id. (footnote omitted) (citing Fair Assessment, 454 U.S. at 110, 102 S.Ct. 177). Only when the states do not provide a “plain, adequate, and complete” remedy in their courts should the federal courts be able to exercise jurisdiction despite the principle of comity. Id. (quoting Fair Assessment, 454 U.S. at 116, 102 S.Ct. 177).
Plaintiffs here brought an action for both a declaratory judgment and monetary damages, and, thus, both the Tax Injunction Act and comity are at play. Because the two doctrines only allow federal courts to exercise jurisdiction when states courts cannot provide “plain, adequate, and complete” remedies, only one analysis is required. Fair Assessment, 454 U.S. at 116 n.8, 102 S.Ct. 177 (“We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are ‘plain, adequate, and complete,’ as that phrase has been used in articulating the doctrine of equitable restraint, and those which are ‘plain, speedy and efficient,’ within the meaning of § 1341.” (citations omitted)). “[S]tate remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax.” In re Gillis, 836 F.2d 1001, 1010 (6th Cir. 1988) (footnote omitted). As has already been discussed above in the ripeness context, the district court and Plaintiffs erred in concluding that Plaintiffs could not challenge the GPTA on constitutional grounds in state court. In fact, such a plain, adequate, and complete avenue for redressing their claims was available. We therefore conclude that the district court erred in finding that the claims were not barred by *823 the Tax Injunction Act and the doctrine of comity, and as a result, mistakenly determined that it could exercise subject matter jurisdiction over Plaintiffs’ claims. Consequently, the district court lacked jurisdiction to entertain this action.
CONCLUSION
For the foregoing reasons, we VACATE the judgment of the district court and REMAND with instructions to DISMISS the action for lack of subject matter jurisdiction.

. The GPTA provides that, after a hearing and a determination that foreclosure is warranted, the county’s circuit court shall issue a foreclosure order specifying, inter alia, "[t]hat fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit,” with only limited exceptions. Mich. Comp. Laws § 211.78k(5)(b); see also id. § 211.78k(5)(d) (explaining that “the foreclosing governmental unit has good and marketable fee simple title to the property”).

. The district court reached the opposite conclusion on the jurisdictional question as the district court in Rafaeli, LLC v. Wayne County, No. 14-13958, 2015 WL 3522546 (E.D. Mich. June 4, 2015), which found that the Tax Injunction Act and the comity doctrine bar plaintiffs from challenging the GPTA in federal court.

. The dissent makes much of the fact that the test set forth in Williamson County is only prudential. Dissent Op. at 823-24. However, the Tax Injunction Act, discussed infra at 821-23, utilizes substantially the same test and is jurisdictional, rather than prudential.

. Indeed, the circuit courts of Michigan routinely decide cases involving causes of action for which a remedy in federal court exists. See, e.g., Mudge v. Macomb Cty., 458 Mich. 87, 580 N.W.2d 845 (1998); Dampier v. Wayne Cty., 233 Mich.App. 714, 592 N.W.2d 809 (1999); Morden v. Grand Traverse Cty., 275 Mich.App. 325, 738 N.W.2d 278 (2007) (per curiam).