NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0437n.06

No. 17-3068

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 25, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| TIMOTHY H. COOPER et al., | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES S. RAPP et al., | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |
| _____ | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: SUHRHEINRICH, GILMAN, and McKEAGUE, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** This appeal involves sanctions imposed by Ohio state-court Judge James S. Rapp while presiding over a class-action lawsuit. After Judge Rapp granted summary judgment in favor of the defendants in that case, he issued monetary sanctions against plaintiff Timothy H. Cooper and both monetary and nonmonetary sanctions against his African-American attorney, Ambrose Moses III. In response, Cooper and Moses filed suit in federal court against Judge Rapp and the Wyandot County Court of Common Pleas, arguing that the sanctions were motivated by Judge Rapp's racial prejudice. The district court dismissed the action, holding that it lacked subject-matter jurisdiction and that the complaint failed to state a claim upon which relief can be granted. For the following reasons, we **AFFIRM** the judgment of the district court.

# I. BACKGROUND

## A.    Factual background

Cooper, a small-business owner, discovered in July 2011 that a cognovit judgment had been entered against him in Wyandot County, Ohio as a result of loan-default proceedings initiated by Commercial Savings Bank. The complaint alleges that the bank regularly sought cognovit judgments against its customers who were in default on their loans. Moses subsequently filed a class-action suit in the Wyandot County Court of Common Pleas on behalf of Cooper and all those similarly situated, alleging that defendants Commercial Savings Bank, bank counsel Linden Back and Sean Martin, and Charles Bartholomew (identified as the "confessing attorney" under the relevant statutory provision) had "misused and abused the cognovit judgment process under [Ohio Revised Code] § 2323.13" and that the statute was unconstitutional.

Judge Rapp presided over this state-court litigation and, in June 2014, granted summary judgment in favor of all the defendants. The defendants subsequently moved for sanctions against Cooper and Moses. After conducting a sanctions hearing in September 2014, Judge Rapp imposed $43,704 in sanctions against both Cooper and Moses. In addition, Judge Rapp ordered Moses to submit a written apology letter to the defendants that acknowledged "remorse for making such unsupported, specious, and scandalous attacks on the Defendants, for wrongfully causing the Defendants harm, and for bringing disrepute to the civil justice system." The order also required Moses to post the letter on his website for a period of at least one year.

When Moses failed to comply with these nonmonetary sanctions, he was ordered to appear before Judge Rapp in March 2016 to show cause why he should not be punished for civil contempt for noncompliance. At the conclusion of the hearing, Judge Rapp postponed the

2

imposition of the order for nonmonetary sanctions for 60 days, but also issued an order requiring Moses to surrender to the county sheriff on May 16, 2016 for a period of incarceration until such time as he complied with the court's order. Moses avoided incarceration by complying with the order and posted a notice of his admonishment and apology letter on his firm's website.

Cooper and Moses claim that Judge Rapp's decisions and conduct in granting summary judgment in favor of the defendants and in imposing sanctions were racially motivated. They allege that, when Moses spoke during the class-action proceedings, Judge Rapp made facial expressions and displayed body language that "expressed and communicated the message that Judge Rapp had very negative feelings towards and was biased against . . . Moses because of his race." Judge Rapp allegedly did not make similar facial expressions or display negative body language when Caucasian counsel for Commercial Savings Bank spoke.

In addition, Cooper and Moses assert that Judge Rapp's prejudice as a Caucasian is part of the systemic racial bias in Ohio's court system, as detailed by the Ohio Supreme Court's Commission on Racial Fairness. The report notes that most Ohio judges are Caucasian, grew up in predominately Caucasian neighborhoods, and have had limited interaction with minorities. It concludes that "[j]udges are human, and prejudices, perceptions, and stereotypes are not lost with the elevation to the bench." Cooper and Moses argue that, because Judge Rapp served as a government official in a predominately Caucasian county for the majority of his career, he is racially biased. Finally, they assert that Ohio's long history of *de jure* and *de facto* racial discrimination, as evidenced by the state's *Black Codes*, proves that "racial bias and the perception of racial bias are a statistical fact" in Ohio's legal system. This "statistical fact," according to Cooper and Moses, justifies the rebuttable presumption that racial bias influenced Judge Rapp's "individual and official conduct, actions, and decisions" relating to Moses.

### B. Procedural background

In April 2016, Cooper and Moses filed suit against Judge Rapp and the Wyandot County Court of Common Pleas in the United States District Court for the Southern District of Ohio. The complaint alleges that the defendants' racially discriminatory conduct during the state-court proceedings violated the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983.

Cooper and Moses did not state these alleged violations as individual counts, instead requesting "declaratory judgment and other relief" that consisted of (1) an order declaring that the actions of state defendants (who are not parties to this federal suit) regarding the cognovit-judgment proceedings were unlawful; (2) an order declaring that Judge Rapp and the Wyandot County Court of Common Pleas violated Cooper's and Moses's rights to freedom of speech, freedom of association, and due process when Judge Rapp imposed monetary sanctions against both of them as well as nonmonetary sanctions against Moses; (3) an order declaring that Judge Rapp and the Wyandot County Court of Common Pleas engaged in unconstitutional racial discrimination, in violation of the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments and of 42 U.S.C. § 1983; (4) an order enjoining Judge Rapp and the Wyandot County Court of Common Pleas from engaging in "such unlawful and wrongful conduct in the future," and staying all proceedings in the class-action litigation; and (5) an order awarding attorney fees, nominal damages, and such other and further relief as the court deemed proper.

As part of their request for relief, Cooper and Moses also sought an order enjoining the March 2016 sanctions hearing and the imposition of Judge Rapp's order that Moses surrender himself to the sheriff in May 2016. We note, however, that the requests for these specific injunctions were moot by the time the district court entered its judgment.

Judge Rapp and the Wyandot County Court of Common Pleas subsequently filed a motion to dismiss all of these claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted their motion on both grounds in December 2016. It first held that it lacked subject-matter jurisdiction based on both the *Rooker-Feldman* doctrine and on *Younger* abstention principles. In the alternative, the court held that Judge Rapp was entitled to absolute judicial immunity and that the Wyandot County Court of Common Pleas was an entity incapable of being sued. This timely appeal followed.

## II.  ANALYSIS

### A.  Standard of review

Challenges to subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules "are categorized as either a facial attack or a factual attack." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). A facial attack on subject-matter jurisdiction, such as the one raised by the defendants in this case, challenges the sufficiency of the pleadings. *Wayside Church v. Van Buren County*, 847 F.3d 812, 817 (6th Cir. 2017). "Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). The district court's ultimate judgment in such cases is reviewed de novo. *Wayside Church*, 847 F.3d at 817. We similarly review de novo the district court's dismissal of Cooper's and Moses's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017).

### B.  Claims against Judge Rapp

The district court held that the dismissal of Cooper's and Moses's claims against Judge Rapp was justified under both Rule 12(b)(1) and Rule 12(b)(6). But on appeal, Cooper and

5

Moses primarily challenge the court's conclusion that Judge Rapp is entitled to judicial immunity under Rule 12(b)(6), and so we will focus on this ground for dismissal. In particular, we will discuss the court's holdings with respect to Judge Rapp's immunity from the monetary damages, declaratory relief, and injunctive relief sought by Cooper and Moses.

### 1. *Claim for monetary damages*

The Supreme Court has established that "generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam); *see also Bright v. Gallia County*, 753 F.3d 639, 648–49 (6th Cir. 2014) (recognizing that "the passage of 42 U.S.C. § 1983 did nothing to change [the] ancient understanding" that judges are generally immune from suits for monetary damages). This far-reaching immunity benefits the public interest in ensuring "that . . . judges should be at liberty to exercise their functions with independence and without fear of consequences," and applies "even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (internal quotation marks omitted).

Judicial immunity is therefore overcome in only two circumstances: (1) when a judge performs "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," and (2) when a judge's actions, "though judicial in nature," are "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (emphasis omitted). Cooper and Moses do not allege that Judge Rapp acted in "complete absence of all jurisdiction," nor could they make any plausible argument to that effect. *See id.*; *see also Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (recognizing that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority")

(internal quotation marks omitted). We therefore focus on only the first exception to judicial immunity and discuss whether Judge Rapp's actions were judicial.

We employ a functional analysis to decide whether Judge Rapp acted in a nonjudicial capacity, "meaning that [we] must determine whether the actions are truly judicial acts or 'acts that simply happen to have been done by judges.'" *Mann v. Conlin*, 22 F.3d 100, 103–04 (6th Cir. 1994) (quoting *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989)). In doing so, we focus on "the nature of the act itself, i.e., whether it is a function normally performed by a judge," and "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362 (emphases omitted). Finally, "[t]he application of judicial immunity is simple and non-controversial when applied to 'paradigmatic judicial acts,' or . . . acts involved in resolving disputes between parties who have invoked the jurisdiction of the court." *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

Judge Rapp's actions—granting motions for summary judgment, conducting a sanctions hearing, imposing sanctions, and ordering Moses to comply with those sanctions—are paradigmatically judicial. Even assuming that Judge Rapp's facial expressions and body language indicated that he was racially biased (as opposed to simply an indication of his disagreement with Moses's arguments), our conclusion remains the same. The district court aptly noted that "the *function* of Judge Rapp's conduct must be the primary consideration—not the conduct itself." *Cooper v. Rapp*, No. 2:16-CV-00163, 2016 WL 7337521, at *7 (S.D. Ohio Dec. 19, 2016) (emphasis in original); *see also Mann*, 22 F.3d at 102–04 (holding that a judge's actions in scheduling hearings, imposing attorney fees, and imprisoning a party for failing to obey a custody order were paradigmatic judicial acts, even though they "may have occasionally

been in error or seemed unduly harsh," and despite allegations that the judge showed bias and favoritism towards one of the litigants). Because Judge Rapp's actions in the state-court proceedings are normally performed by a judge acting in his judicial capacity, *see Stump*, 435 U.S. at 362, the district court did not err in concluding that he was entitled to judicial immunity on Cooper's and Moses's claims for monetary damages.

### 2. *Claim for declaratory relief*

The district court also held that Cooper and Moses were not entitled to declaratory relief against Judge Rapp. On appeal, Cooper and Moses correctly point out that a 1996 amendment to 42 U.S.C. § 1983 recognizes the availability of such relief. The amended language, italicized below, reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable*.

42 U.S.C. § 1983 (emphasis added). This language "implicitly recognizes that declaratory relief [in an action brought against a judicial officer] is available in some circumstances." *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197 (3d Cir. 2000). *See also Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016) (noting that "the plain language of § 1983 contemplates a declaratory judgment against judicial officers . . . in their official capacities").

But "determining whether the declaratory relief is available [under § 1983] . . . turns on whether the judge[]" can properly be named as a defendant. *Listenbee*, 201 F.3d at 198. In other words, abstention doctrines and Article III of the United States Constitution still serve to limit

the availability of such relief. *Ward*, 640 F. App'x at 468. In the instant case, Cooper's and Moses's request for a declaratory judgment is barred by Article III's case-or-controversy requirement, which "operates to ensure that declaratory relief is available only when a live controversy continues to exist." *Id.*

Judge Rapp was not an adversary of Cooper or Moses in the state-court proceedings, which challenged the implementation of Ohio's cognovit-judgment statute by Commercial Savings Bank. Nor was he acting as the enforcer or administrator of that statute. Instead, Judge Rapp acted as a disinterested judicial adjudicator, bound to decide the issues before him according to the law. *See In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir. 1982). Under these circumstances, Judge Rapp is not amenable to a suit for declaratory relief under § 1983. *See Listenbee*, 201 F.3d at 199 (recognizing that, while "judges [are] amenable to suit under § 1983," such suits are improper "where the judge acted as an adjudicator rather than an enforcer or administrator of a statute"); *see also In re Justices of Supreme Court of Puerto Rico*, 695 F.2d at 21 (noting that "at least ordinarily, no 'case or controversy' exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute"). The district court therefore did not err in dismissing Cooper's and Moses's request for declaratory relief against Judge Rapp.

### 3. *Claim for injunctive relief*

Finally, Cooper and Moses sought injunctive relief against Judge Rapp. Cooper and Moses do not directly challenge the district court's denial of such relief on appeal, instead mentioning their request for injunctions only in passing throughout their briefs. They have therefore likely waived any challenge to this holding. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (holding that "[i]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived," and that "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

In any event, suits for injunctive relief against judicial officers are barred "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The district court correctly noted that Cooper and Moses failed to allege that Judge Rapp violated a declaratory judgment. Nor did they demonstrate that declaratory relief was "unavailable," albeit, as explained above, they are not entitled to such relief. The court therefore did not err in holding that Judge Rapp was immune from Cooper's and Moses's claims for injunctive relief.

### 4. *Dismissal under Rule 12(b)(1)*

Because Judge Rapp is entitled to judicial immunity on Cooper's and Moses's claims, we affirm the district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. We therefore have no need to review the court's alternative basis for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In any event, Cooper and Moses likely waived any challenge to the court's holding that it lacked subject-matter jurisdiction because they do not squarely address the court's reasoning with respect to the *Rooker-Feldman* doctrine or with respect to *Younger* abstention principles in their appellate briefs. *See McPherson*, 125 F.3d at 995–96.

### C. Claims against the Wyandot County Court of Common Pleas

Cooper and Moses similarly fail to address with any specificity the district court's dismissal of their claims against the Wyandot County Court of Common Pleas. But even if Cooper and Moses did not waive their right to appeal this issue, the court correctly concluded

that the Wyandot County Court of Pleas "is not a proper party, because it lacks an 'independent legal existence' and thus is incapable of being sued." *Cooper v. Rapp*, No. 2:16-CV-00163, 2016 WL 7337521, at *8 (S.D. Ohio Dec. 19, 2016) (quoting *Leisure v. Franklin Cty. Court of Common Pleas*, No. 2:07-cv-817, 2008 WL 4239005, at *4 (S.D. Ohio Sept. 8, 2008)).

The Ohio Supreme Court has recognized that "[a] court is . . . a place in which justice is judicially administered." *State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 296 N.E.2d 544, 546 (Ohio 1973) (quoting *Todd v. United States*, 158 U.S. 278, 284 (1895)). It "is not sui juris," so "[a]bsent express statutory authority, a court can neither sue nor be sued in its own right." *Id*. Cooper and Moses do not point to any statute allowing them to bring suit against the Wyandot County Court of Common Pleas. The district court therefore did not err in dismissing those claims.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.