NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0866n.06

Case No. 13-2453

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 18, 2014

DEBORAH S. HUNT, Clerk

SHERMAN PEGROSS, aka Rosenblum and )
Frankel Investment Company, )
 )
    Plaintiff-Appellant, )
 )
v. )
 )
 )
OAKLAND COUNTY TREASURER; )
ANDREW MEISNER; OAKLAND, )
COUNTY OF, )
 )
    Defendants-Appellees. )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: COOK and GRIFFIN, Circuit Judges; RICE, District Judge[*]

RICE, District Judge. Attempting to prevent the Oakland County Treasurer from collecting tax revenue by auctioning off foreclosed properties that he did not own instead of accepting redemption payments from him, Sherman Pegross filed suit in federal court. He sought an injunction to prevent the sale of the properties, a declaratory judgment stating that the Oakland County Treasurer's refusal to accept his payments violated his constitutional rights, and compensatory and punitive damages based on alleged violations of 42 U.S.C. § 1983. However, where adequate state remedies exist, the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and

---

[*]The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

principles of comity deprive federal courts of jurisdiction to provide the remedies that Pegross sought. Federal question jurisdiction requires that a federal court "must look to see whether the alleged claim actually 'arises under' the Constitution or federal statutes and is not made solely for the purpose of obtaining jurisdiction," regardless of the labels that a plaintiff applies to his claims. *Bush v. State Indus., Inc.*, 599 F.2d 780, 784 (6th Cir. 1979). Pegross' mere citations to 42 U.S.C. § 1983 or the Fourteenth Amendment could not create federal court jurisdiction, as the claims he alleged were barred by principles of comity and the TIA. *See*, *e.g.*, *Schneider Transp., Inc. v. Cattanach*, 657 F.2d 128, 131 (7th Cir. 1981) ("It is well settled that allegations of deprivations of constitutional rights do not render the [TIA] inapplicable."); *Mandel v. Hutchinson*, 494 F.2d 364, 366 (9th Cir. 1974) (holding that "[t]he jurisdictional bar of" the TIA could not be overcome by mounting a constitutional challenge to the state's tax collection scheme brought under § 1983). Because it lacked jurisdiction over Pegross' claims, the district court should have dismissed them from the outset. Accordingly, we VACATE the order of the district court and REMAND the case to the district court with instructions to DISMISS for lack of jurisdiction.

I.

On July 12, 2012, Sherman Pegross d/b/a Rosenblum & Frankel Investment Co. ("Pegross") filed a complaint and a motion for a preliminary injunction in the United States District Court for the Eastern District of Michigan against Andrew Meisner, the treasurer of Oakland County, Michigan ("County Treasurer"), alleging violations under 42 U.S.C. § 1983 of his Fourteenth Amendment equal protection and due process rights. (R. 1 & 2.) Pegross alleged that he had "negotiated private deals" with the owners of four properties that were facing

foreclosure and sale at auction to satisfy delinquent tax obligations. (R. 1 at 3.) Then, allegedly as "the designated agent acting on behalf of owners and/or with the owners' full authorization," Pegross entered into redemption agreements with the County Treasurer, whereby he would pay a portion of the delinquent taxes in exchange for the postponement of the foreclosure sales and the implementation of payment plans to satisfy the tax obligations. (*Id.* at 12.) The County Treasurer eventually determined that Pegross had no ownership interest in the properties, refused to accept any more payments from him, and scheduled the properties for auction. (*Id.* at 2, 4-7.) Pegross claimed that, by refusing to accept payments from him, the County Treasurer rescinded the agreements in violation of his due process and equal protection rights. (*Id.* at 9-13.)

Pegross amended the complaint on July 18, 2012, naming as additional defendants the Oakland County Treasurer's Office and Oakland County (collectively, with the County Treasurer, the "County Defendants"). (R. 4.) He also added state law claims for breach of contract, promissory estoppel, negligent and intentional infliction of emotional distress, and a violation of Mich. Comp. Laws § 440.2209, a provision of the state's Uniform Commercial Code. (*Id.* at 13-15.) Pegross sought a declaratory judgment stating that his rights under the U.S. Constitution and Michigan law had been violated, injunctive relief preventing the sale of any of the properties, and compensatory and punitive damages. (*Id.* at 15.)

On July 19, 2012, Pegross moved the district court for a temporary restraining order, seeking an injunction preventing the sale of two of the properties that the County Treasurer had scheduled for August 2012. (R. 8.) The district court denied injunctive relief on August 3, 2012. (R. 13). According to the district court, Pegross had not demonstrated a strong likelihood of success on the merits because there was no evidence that he had any interest in the properties,

and, even if he did, the district court held that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, barred his claims because there was an adequate remedy in state court for the alleged injuries. (*Id.* at 2-3.) The district court also held that Pegross failed to demonstrate irreparable harm because the TIA precluded his constitutional claims, which were the only source of non-monetary injury alleged that might amount to irreparable harm. (*Id.* at 3-4.)

Pegross moved the district court for reconsideration of its decision on August 9, 2012. (R. 15.) The next day, Pegross filed a motion for an emergency hearing, clearly panicked by looming tax foreclosure sales that had been scheduled for August 20 and 21. (R. 16.) Pegross then sought a writ of mandamus and a stay of the tax foreclosure proceedings from this court, which denied both requests on August 17, 2012. (R. 19.)

Litigation continued in the district court. On March 27, 2013, the County Defendants filed a motion to compel after Pegross failed to respond to their discovery requests. (R. 24.) After a hearing, the motion was granted on May 1, 2013, and Pegross was ordered to provide responses to interrogatories, documents, and supplemental answers to his initial disclosures. (R. 28.)

On May 17, 2013, Pegross moved for voluntary dismissal without prejudice under Fed. R. Civ. P. 41, stating "I am currently overwhelmed by this case and I can no longer defend myself against the [w]ealthy Oakland County attorneys in my current capacity." (R. 29.) The County Defendants opposed the motion, responding that they would be prejudiced by a dismissal without prejudice because of the effort they had expended to defend the case. (R. 30.) Citing the prejudice that dismissal would cause and Pegross' failure "to diligently prosecute this matter, as

demonstrated by his failure to cooperate in discovery," the district court denied the motion on July 3, 2013. (R. 32.)

The County Defendants moved the district court for summary judgment on July 31, 2013. (R. 34.) They submitted dozens of exhibits to support their contention that Pegross owned no legally recognized interest in the properties in question, and that he or his agents had misrepresented themselves to induce the County Treasurer to enter into the redemption agreements.

The County Defendants made a barrage of arguments in support of summary judgment. First, the Oakland County Treasurer's Office was merely a department of the county, and was therefore not a legal entity subject to suit. (*Id.* at 21.) Second, the County Treasurer was entitled to summary judgment on Pegross' § 1983 claims because there were no facts that showed, or even alleged, that he acted outside the scope of his authority to encourage or participate in unconstitutional behavior, as required to attach supervisor liability. (*Id.* at 22-25.) Third, the County Treasurer was entitled to qualified immunity because Pegross failed to allege that he had taken any action outside the scope of his authority in an unconstitutional manner. (*Id.* at 25.) Fourth, Michigan law provided the County Treasurer with absolute immunity from Pegross' state law tort claims. (*Id.* at 26.)

The County Defendants also addressed Pegross' federal and state claims against Oakland County with a number of arguments. (*Id.* at 26-29.) First, Pegross' failure to state what policy or custom caused his alleged constitutional violations was fatal to his § 1983 claim because municipality liability hinges on the existence of a policy or custom that causes a constitutional violation. (*Id.*) Second, the county was immune from liability under Michigan's Governmental

Immunity Act, Mich. Comp. Laws § 691.1407(1), which grants absolute immunity from tort liability to a governmental agency "engaged in the exercise or discharge of a governmental function." (*Id.* at 29-30.) Third, Pegross' claim invoking Michigan's Uniform Commercial Code could not apply to the alleged rescission of the payment agreements because the statute only applied to the sale of goods. (*Id.* at 30.)

Finally, the County Defendants argued that res judicata and the Tax Injunction Act barred Pegross' claims. (*Id.* at 31-34.) Res judicata applied because Pegross' purported interest in the properties had been litigated in state court. (*Id.* at 32-33.) Furthermore, the TIA prevented Pegross from challenging the County Treasurer's authority to assess and collect taxes under state law, which provided adequate remedies to aggrieved taxpayers. (*Id.* at 33-34.) In the view of the County Defendants, Pegross' misrepresentation amounted to fraud and a justifiable reason to void any contracts he had entered into, which entitled them to judgment as a matter of law on his breach of contract/promissory estoppel claim. (*Id.* at 34-35.)

Pegross responded on August 26, 2013. (R. 36). He argued that the County Treasurer was "using his power as a high ranking member of the Oakland County Government to discriminate against Plaintiff based solely on his race and criminal background," and that the County Treasurer had allowed other property owners to redeem their property while "deny[ing] Plaintiff the same courtesy." (*Id.* at 3.) He also claimed that the County Treasurer had breached the payment agreements based on his race and criminal background, in violation of his due process and equal protection rights. (*Id.* at 4.) Pegross asserted that he had had a right to notice and a hearing before the County Treasurer rescinded the contracts, and argued that the County Defendants did not have proper evidence to support their accusations of misrepresentation. (*Id.*

at 5.) According to Pegross, the County Treasurer had the burden to "ensure" that Pegross' representations were accurate before accepting his payments. (*Id.*)

The district court granted the motion for summary judgment on October 11, 2013. (R. 38.) The court first held that the Oakland County Treasurer's Office was not a legal entity subject to suit. (*Id.* at 3.) The court granted summary judgment on the federal claims against the County Treasurer, finding that "the record is devoid of facts that [he] condoned unconstitutional conduct" against Pegross. (*Id.* at 4-5.) The district court also rejected the contention that the County Treasurer had discriminated against Pegross because of his race or criminal background, as the argument had only been raised in response to summary judgment and no evidence in the record supported the assertion. (*Id.* at 4 n. 2.) The County Treasurer was also granted absolute immunity on Pegross' state law tort claims under Mich. Comp. Laws § 691.1407(5). (*Id.* at 5.) The court further stated that, apart from statutory immunity, the County Defendants were entitled to summary judgment on the breach of contract claim because Pegross had presented no evidence that he had any interest in the properties, which supported the argument that the contracts were voidable. (*Id.* at 5-6.) Finally, the court agreed that Oakland County was entitled to summary judgment on Pegross' federal and state claims, because Pegross had not identified any policy or custom that had caused a constitutional violation, and Mich. Comp. Laws § 691.1407(1) provided immunity to the county from the state claims. (*Id.* at 6-7.)

Pegross filed a timely notice of appeal on October 23, 2013. (R. 40.) On appeal, Pegross made the same arguments that he had made to the district court when responding to Defendants' Motion for Summary Judgment. (Doc. #24.) In Appellees' Brief, the County Defendants noted that Pegross failed to cite any legal authority to support his claims or identify any evidence to

support his allegations, and argued that the district court correctly granted summary judgment in their favor for the reasons set forth in its decision. (*Id.* at 18-24.)

After reviewing the parties' briefs, we requested additional briefing by the parties to address whether, in light of the Tax Injunction Act, 28 U.S.C. § 1341, the district court had jurisdiction over Pegross' claims. Both parties replied by filing letter briefs on August 25, 2014.

In Pegross' letter brief, he argued that the TIA did not divest the district court of jurisdiction over his case. According to Pegross, federal courts have "interpreted and applied the TIA only to those cases where the state taxpayer sought federal-court orders enabling them to avoid paying state taxes," and the statute would therefore "be applied over-broadly" if held to bar his claims. (Doc. #35 at 1-2.) Pegross distinguished his claims from challenges to tax collection barred by the TIA on the grounds that he was "not only *not* challenging the levy of the taxes nor requesting the suspension or restraining of taxes; but in fact, he [was] in favor of the levy and collection of the taxes in relation to these properties, and wishe[d] only to pay them." (*Id.* at 3.)

In their letter brief, the County Defendants argued that Pegross' claims were barred by the TIA because Michigan law provided him with the "plain, speedy and efficient remedy" the act requires. (Doc. 36.) They pointed out that Pegross was given the opportunity to litigate his claims in state court, but that he failed to pursue them in a timely manner, thereby waiving his right to object to the tax foreclosure proceedings. (*Id.* at 2.) They also argued that Pegross failed to even allege that the state remedies were inadequate when he claimed that the foreclosure was unconstitutional. (*Id.*)

II.

Under the TIA, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (stating that the TIA "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"); *California v. Grace Brethren Church*, 457 U.S. 393, 396, 408 (1982) (holding that the TIA "deprived the District Court of jurisdiction to hear" a First Amendment challenge to state and federal taxation regimes, and extending TIA's prohibition on injunctive relief to declaratory judgments); *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007) (quoting *Grace Brethren* and stating that "a district court does not have jurisdiction over state and local tax matters where a 'plain, speedy and efficient remedy' is available in state court"). Here, the Oakland County Treasurer was going to sell the properties to collect unpaid property taxes, and Pegross requested an injunction from the district court to halt their sale. Any such injunction would have operated to "enjoin, restrain or suspend" the County Treasurer's collection of the unpaid property taxes, raising the specter of the TIA's jurisdictional bar. The same was true of Pegross' request for a declaratory judgment that declared the County Treasurer's actions illegal, as the TIA "prohibits declaratory as well as injunctive relief." *Grace Brethren Church*, 457 U.S. at 411.

Nor did Pegross' invocation of 42 U.S.C. § 1983 provide any basis for the district court to hear his claims. The doctrine of comity, which is "more embracive than the TIA," forbids suits for damages under 42 U.S.C. § 1983 brought to remedy allegedly unconstitutional state tax assessment or collection. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 424 (2010) (citing *Fair Assessment in Real Estate Ass'n*, *Inc. v. McNary*, 454 U.S. 100 (1981)). In *Fair Assessment*, the Supreme Court held that:

> taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court.

454 U.S. at 116.

There is "no significant difference . . . between remedies which are 'plain, adequate, and complete,'" such as would be barred by principles of comity, "and those which are 'plain, speedy and efficient,' within the meaning of [the TIA]." *Id.* at n.8. "In both cases the standard 'require[s] a state court remedy that meets certain minimal *procedural* criteria.'" *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 542 (6th Cir. 2004) (quoting *Rosewell*, 450 U.S. at 512) (alteration and emphasis in original). A remedy need only "provide[] the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *See Rosewell*, 450 U.S. at 514. Thus, the ability of the district court to hear Pegross' claims depended upon the lack of an adequate remedy in the state courts. Here, however, Michigan state courts provided such remedies.

For example, under Michigan law, any owner or holder of a legal interest in a property on which delinquent taxes are owed is entitled to notice of foreclosure. Mich. Comp. Law

§ 211.78f. The notice must contain a "statement of the person's rights of redemption" and state the deadline for initiating the redemption process. *Id.* § 211.78f(h). Although Pegross' claims all involved actions of the County Treasurer that occurred after the initiation of the redemption process, Michigan law allowed the state court to extend the redemption period for equitable reasons. *Id.* § 211.78k(4). Pegross also filed several quiet title actions, thereby availing himself of existing state remedies that might have established his legal interest in the properties he sought to redeem.[1]

The Seventh Circuit upheld the dismissal of a similar case in *Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001). In *Wright*, the Seventh Circuit held that the TIA and principles of comity barred a plaintiff from bringing a § 1983 claim against a county treasurer based on allegations of race discrimination. *Id.* at 637-38. The plaintiff purchased a number of tax liens on foreclosed properties at auction, then came to believe that the county treasurer had misrepresented their value because of the plaintiff's race. *Id.* at 636. The plaintiff filed suit under § 1983 and demanded a refund as relief. *Id.* The Seventh Circuit upheld the district court's decision to dismiss the lawsuit because the TIA deprived the federal court of jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection" of state taxes. *See id.* at 636-38. Of particular

---

[1] In an unpublished opinion, we held that the TIA barred a claim under 42 U.S.C. § 1983 by a Michigan resident whose failure to record a property deed with his name on it prevented him from receiving a notice of foreclosure from the county treasurer. *Johnson v. Michigan Dep't. Treasury*, 211 F.3d 1269, 2000 WL 571916, (6th Cir. 2000) (unpublished table decision). The plaintiff "had a remedy under state law in the form of redemption, of which he failed to take advantage. He could also have sought relief in the state courts, but did not." *Id.* at *2. The fact that Pegross attempted to find relief in the state courts, through multiple actions to quiet title and emergency appeals to the state appellate court, but did not prevail, does not make his claims more worthy of a federal court hearing than those in *Johnson*. Neither case challenges the adequacy of Michigan's remedies for aggrieved taxpayers.

relevance to Pegross' appeal is the Seventh Circuit's observation that a lien sale qualifies as "collection" under the TIA:

> A lien sale is a mode of tax collection; and so an action to enjoin it, or declare it illegal, or rescind it, or perhaps even just obtain damages on the ground of its illegality, would be barred by the [TIA] or, in the case of the damages suit, by the free-standing principle of comity.

*Id.* at 637. The property sales that Pegross sought to prevent served the same purpose: the collection of taxes. *See* Mich. Comp. Law § 211.78a(1) (stating that "all property returned for delinquent taxes . . . is subject to forfeiture, foreclosure, and sale for the enforcement and collection of the delinquent taxes"). An injunction would have interfered with the County Treasurer's ability to collect the delinquent taxes owed on the properties, but, as in *Wright*, is impermissible under the TIA and principles of comity.

The district court did recognize that Pegross' claims were "barred by the Tax Injunction Act" when it overruled his motion for preliminary injunction and motion for a temporary restraining order, but only for the purpose of determining that Pegross was unlikely to prevail on the merits of his claims. (R. 13 at 2.) A more searching jurisdictional inquiry should have followed. *See*, *e.g.*, *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."). Instead, Pegross and the County Defendants continued to litigate the case for another year, during which time he ignored discovery requests until his intransigence forced them to file a motion to compel. Meanwhile, quiet title actions were heard in state court, and the properties were sold at auction. Those state proceedings were Pegross' real opportunity to obtain an adequate remedy for his claims, not the lawsuit he filed in district court.

Pegross' assertion that barring his claims under the TIA would be an overbroad application of the statute because courts have "interpreted and applied the TIA only to those cases where the state taxpayer sought federal-court orders enabling them to avoid paying state taxes" is without merit. Courts broadly construe the statutory language describing "the assessment, levy or collection of any tax under State law" to include actions beyond those filed by recalcitrant taxpayers. *See Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987) (stating that the TIA "afford[s] states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising"). The Seventh Circuit's decision in *Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001), discussed previously, demonstrates this, as the court there held that a foreclosure sale by a county treasurer fell within the definition of tax "collection" under the TIA. Furthermore, Pegross has not argued, much less demonstrated, that he was deprived of the opportunity to obtain a "plain, speedy and efficient remedy" in Michigan state court, a prerequisite to overcoming the jurisdictional bar of the TIA. *Fair Assessment*, 454 U.S. at 116. His attempts to obtain relief in that forum may have been fruitless, but that fact does not reflect on the adequacy of the remedy that Michigan law provides to its taxpayers.

III.

Because the Tax Injunction Act, 28 U.S.C. § 1341, and principles of comity barred Pegross' claims from federal court, we vacate the entry of summary judgment and order the cause dismissed for lack of subject matter jurisdiction.