RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0318p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DONALD FREED,

         *Plaintiff-Appellant*,

    *v.*

MICHELLE THOMAS; COUNTY OF GRATIOT,

         *Defendants-Appellees*,

MICHIGAN DEPARTMENT OF ATTORNEY GENERAL,

         *Intervenor-Appellee*.

> No. 18-2312

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:17-cv-13519—Bernard A. Friedman, District Judge.

Argued: May 9, 2019

Decided and Filed: September 30, 2020

Before: SILER, GIBBONS, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellees Michelle Thomas and County of Gratiot. Matthew B. Hodges, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Michigan Department of Attorney General. Christina M. Martin, PACIFIC LEGAL FOUNDATION, Palm Beach Gardens, Florida, for Amicus Curiae. **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellees Michelle Thomas and County of Gratiot. Matthew B. Hodges, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Michigan Department of Attorney General.

Christina M. Martin, PACIFIC LEGAL FOUNDATION, Palm Beach Gardens, Florida, for Amicus Curiae.

SILER, J., delivered the opinion of the court in which GIBBONS, J., joined. LARSEN, J. (pp. 17–20), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

SILER, Circuit Judge. After Donald Freed fell behind on his property taxes by about $1,100, the State of Michigan foreclosed on his real property, sold it at auction for about half of its fair market value, and kept all the proceeds of the sale. Freed got nothing. So he filed this lawsuit in federal court under 42 U.S.C. § 1983 alleging, inter alia, an unconstitutional taking by state and local officials in violation of the Fifth Amendment.

We do not address the merits of Freed's claims. We hold only that neither the Tax Injunction Act ("TIA") nor the related doctrine of comity forestall Freed's suit from proceeding in federal court. Thus, we reverse the judgment of the district court and remand for further proceedings.

I.

Freed owed $735.43 in taxes on his property valued at about $97,000. The amount owed grew to $1,109.06 once administrative expenses, costs, and interest were added. Freed claims he did not know he was behind on his taxes because he cannot read or write well.

When a property owner falls behind on his taxes in Michigan, the local county treasurer can file an in-rem action in circuit court under the General Property Tax Act ("GPTA"), MCL § 211.78 *et seq*. Michelle Thomas, Gratiot County's treasurer, did so in June 2016, and the state court ordered foreclosure in February 2017. Thomas sold the property six months later at a public auction to a third party for $42,000. Freed got nothing; he lost his home and all its equity.

Freed sued Thomas and Gratiot County in October 2017, claiming they (1) took his property without paying just compensation in violation of the Fifth Amendment's Takings Clause, and (2) imposed an excessive fine against him in violation of the Eighth Amendment.

Freed filed his lawsuit under 42 U.S.C. §§ 1983, 1988 and sought monetary damages, a declaration, and injunctive relief.

Defendants moved to dismiss, arguing that the district court lacked subject-matter jurisdiction because Freed did not first pursue remedies in state court. Under the Supreme Court's then *Williamson County* doctrine, federal courts refrained from hearing Takings Clause cases until plaintiffs exhausted their claims in the state courts. *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Defendants also argued that our decision in *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812 (6th Cir. 2017), doomed Freed's claims.

Initially, the district court disagreed and denied defendants' motion. Acknowledging that, at that time, *Williamson County* required a plaintiff to first "seek compensation through the procedures the State provided for doing so," the district court determined that Freed need not comply with that command because he met an exception: Michigan did not provide "reasonable, certain, and adequate" remedies for Freed's claims. And when the state does not provide such remedies, a plaintiff could go around *Williamson County* and enter the federal courthouse. 473 U.S. at 194. Yes, the district court said, Michigan has an inverse condemnation process, but that had not been used in the GPTA context. Not only that, but a Michigan intermediate appellate court had held that GPTA claims like Freed's do not constitute a taking. *See Rafaeli, LLC v. Oakland Cnty.*, No. 330696, 2017 WL 4803570, *4 (Mich. Ct. App. Oct. 24, 2017) ("*Rafaeli I*"), *rev'd*, 2020 WL 4037642, ___ N.W.2d ____ (Mich. 2020) ("*Rafaeli II*"). And if the state courts had already said that GPTA challenges fail under the Fifth Amendment, does the state really provide "reasonable, certain, and adequate" remedies? The district court said no because *Rafaeli I* "casts serious doubt on the notion that plaintiff could use inverse condemnation to obtain the surplus equity at issue here." So, the court held *Williamson County* did not apply.

But to continue his lawsuit, Freed also had to successfully navigate the TIA and comity principles. The TIA tells district courts not to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. If a plaintiff challenges the enforcement of a tax,

then, he must go to state court first, unless such remedies are not plain, speedy and efficient. *Wayside Church*, 847 F.3d at 821–23.

Looking to Freed's complaint, the district court first determined that the TIA did not apply to two claims asking the court to enjoin defendants from keeping the surplus equity in his home. The court reasoned that because Freed was not challenging his tax liability and was not trying to stop the state from collecting it, the TIA did not bar his suit. As to Freed's request that the court enjoin enforcement of the GPTA against him and declare it unconstitutional, the district court held the TIA applied, but that Freed could pursue the claims because no plain, speedy, and efficient remedy existed in state court. The district court used the same reasoning to reject defendants' arguments that comity principles compelled dismissal.

After discovery, the parties filed motions for summary judgment. And then the district court reversed course. In a November 2018 opinion and order, the district court sua sponte dismissed Freed's case for lack of subject matter jurisdiction. Calling the GPTA process "unconscionable" and an "unfair" scheme that "calls out for relief," the district court concluded that it could not hear the case. It determined *Wayside Church* was "factually and legally indistinguishable," where the Sixth Circuit required a Michigan plaintiff to challenge the GPTA in state court. Its hands tied, the district court vacated its prior order, dismissed the case, and entered judgment in favor of defendants, despite recognizing that it was "doubtful" Freed could win in state court. The district court held that, together, *Williamson County* and *Wayside Church* meant Freed could not go forward, so the case ended. Freed appealed.

After oral argument in this appeal, the Supreme Court overruled *Williamson County*, holding that "[a] property owner may bring a takings claim [in federal court] under § 1983 upon the taking of his property without just compensation by a local government." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019).

As a result, the parties filed supplemental briefing on how the *Knick* decision affected the legal issues in the case. Thomas, Gratiot County, and the Michigan Attorney General argue that this case may not proceed in federal court, notwithstanding the *Knick* decision, because Freed is seeking to enjoin the state's collection of a tax in violation of the TIA. Moreover, they argue that

the principle of comity encourages federal court abstention in this case regarding state tax administration. Alternatively, Freed argues that this case may proceed in federal court because this is not a tax case. Freed contends that this lawsuit is only about just compensation after collection of a delinquent tax. This appeal is ripe for review.

## II.

We review a district court's decision to dismiss a complaint for lack of subject-matter jurisdiction de novo. *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 714 (6th Cir. 2013). But, after the Supreme Court's ruling in *Knick*, the remaining issues are questions of law pertaining to whether the TIA or doctrine of comity bar federal jurisdiction. In any event, the standard of review is unchanged because we review questions of law de novo. *United States v. Potter*, 927 F.3d 446, 450 (6th Cir. 2019).

## III.

This case presents two primary issues. First, does the TIA preclude federal court jurisdiction? Second, should this court refrain from exercising jurisdiction in this case based on the principle of comity between federal and state courts?

## A.

*The Tax Injunction Act*. The TIA does not preclude the exercise of federal jurisdiction in this case because Freed is not attempting to enjoin Michigan's assessment, levy, or collection of a state tax. First, Freed does not dispute his tax liability or delinquency. As such, he is not challenging the assessment or levy of taxes. Second, Freed does not quarrel with Michigan's authority to foreclose, sell his property, and satisfy his tax debt from the proceeds of the sale. As a result, Freed does not challenge or seek to enjoin state tax collection procedures. Instead, Freed challenges Michigan's post-collection failure to reimburse him for the excess proceeds from the sale of his property and the State's refusal to compensate him for the excess after-tax equity of his property. Thus, this is a case about post-collection federal constitutional violations that may proceed in federal court, not a tax case barred by the TIA.

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The Act is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (citations omitted). To that end, the TIA restricts suits seeking injunctions or declaratory judgments in federal court pertaining to the collection of state taxes, including challenges to a state's seizure or forfeiture of a delinquent taxpayer's property. *See id.*; *see also Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 10 (2015).

Still, Congress did not enact the TIA "'to prevent federal-court interference with all aspects of state tax administration,'" but instead "to stop litigants from using federal courts to circumvent States' 'pay without delay, then sue for a refund' regimes." *Direct Mktg.*, 575 U.S. at 19 (Ginsburg, J., concurring) (quoting *Hibbs v. Winn*, 542 U.S. 88, 104–05 (2004)). In *Hibbs*, the Supreme Court articulated a narrow scope of claims subject to the Act, holding that the TIA does not bar claims that relate generally to "state tax administration"; instead, the relief sought must disrupt "the collection of revenue" by "operat[ing] to reduce the flow of state tax revenue." *Hibbs*, 542 U.S. at 105–06.

To determine if the TIA bars this suit, "it is appropriate, first, to identify the relief sought." *Id.* at 99. Freed seeks prospective and retroactive relief, including a declaration that the appellees' conduct was—both as applied and facially—unconstitutional, an order for injunction "to halt the illegal processes and procedures" of the appellees, and monetary damages.

The appellees contend that allowing Freed to file suit for the surplus equity of his property in federal court amounts to a challenge to the State's tax collection procedures. As they see the case, Freed's recovery of the excess sale proceeds and surplus equity is part of a comprehensive tax-collection procedure.

But the appellees' position strains the meaning of *collection*. The Supreme Court explained that the discrete act of "collection" as used in the TIA constitutes "the act of obtaining payment of taxes due." *Direct Mktg.*, 575 U.S. at 10 (citation omitted).

This is not such a suit. Freed does not seek to anticipatorily restrain collection of a state tax. Michigan collected the taxes due when it sold Freed's property and used the proceeds to satisfy Freed's tax liability. The collection procedure—"the act of obtaining payment of taxes due," *see id.*—terminated when the State satisfied the $1,100 tax debt from the proceeds of the sale of Freed's property. Freed's feud with the State arises from *post-collection* actions, specifically Michigan's refusal to refund the excess proceeds of the sale of Freed's property and failure to reimburse Freed for the surplus equity in his home.

Nor is this suit bringing a facial constitutional challenge to Michigan's tax-collection procedures. The Michigan Attorney General contends that Freed's lawsuit is a thinly-veiled facial challenge to the constitutional validity of the GPTA. Not so. Of course, Freed does seek a federal court injunction "to halt the illegal processes and procedures of Defendants in violation of the Fifth, Eighth and/or Fourteenth Amendments to the United States Constitution." But the processes and procedures that Freed challenges are not Michigan's tax collection procedures. Instead, Freed challenges the State's processes and procedures after tax collection. Thus, this case is about refund procedures, not collection procedures.

Moreover, the excess sale proceeds at issue in this lawsuit arise from a tax-foreclosure sale, but they are not *tax* proceeds. It is undisputed that Freed owed approximately $1,100 in taxes and fees. As such, any sale proceeds in excess of $1,100 are not taxes or tax proceeds within the meaning of the TIA. Of course, the excess proceeds are the result of tax collection through a tax-foreclosure sale, but neither the State nor Gratiot County appears to have any property right or interest in the excess sale proceeds. *See Rafaeli II*, No. 156849, 2020 WL 4037642, at *21, ___ N.W.2d ___ (Mich. 2020) ("Once [the government] foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes . . . any surplus resulting from those sales belonged to plaintiffs. . . . [A]ny surplus that remains [was] the property of plaintiffs, and [the government] [was] required to return that property to the plaintiffs."). If Freed succeeds in recovering the excess sale proceeds as a result of this lawsuit—the auction proceeds minus taxes and fees owed—no *tax proceeds* will be removed from Michigan's coffers. Thus, any funds in excess of Freed's $1,100 tax debt—the only funds at issue in this lawsuit—represent surplus property, not tax proceeds.

Other courts have found the TIA did not apply in similar circumstances. For example, when Benjamin Coleman failed to pay his property taxes in a timely manner, the District of Columbia sold the tax debt to Embassy Tax Services, LLC. *Coleman ex rel. Bunn v. District of Columbia*, 70 F. Supp. 3d 58, 64 (D.D.C. 2014). Embassy moved to foreclose Coleman's right of redemption. *Id.* After default judgment was entered, Embassy sold Coleman's property and kept all the proceeds. *Id.* at 65. Coleman alleged that an unconstitutional taking occurred when the District took his property and transferred it to a private party without compensating him for the surplus equity. *Id.* The court held that the TIA did not bar Coleman's suit because Coleman did not seek to avoid paying taxes; instead, Coleman sought only the surplus equity after his tax burden was paid. *Id.* at 68.

Moreover, the court rejected the District's argument that Coleman's claims would frustrate the collection of taxes because a favorable outcome for Coleman would result in an order holding that the District's tax collection procedures were unconstitutional. *Id.* The District argued that the "treatment of a homeowner's surplus equity [was] inextricably intertwined with the process by which a tax lien [was] sold to a third party and a former homeowner's right to redeem the property itself [was] foreclosed upon." *Id.* Essentially, the District contended that forfeiting the surplus equity was an additional incentive to encourage timely payment of taxes. *Id.* But the court rejected that argument, noting that challenges to independent incentives to secure payment of taxes are not barred by the TIA. *Id.* (citing *Hibbs*, 542 U.S. at 109; *Wells v. Malloy*, 510 F.2d 74 (2d Cir. 1975)).

The appellees argue that *Coleman* is inapplicable here because the statute at issue in *Coleman* expressly provided the taxpayer with a property interest in surplus proceeds. They argue that in this case, however, the GPTA "instead provides a pre-foreclosure redemption option, instead of a post-foreclosure proceeds recovery." But that distinction is of no consequence in determining whether the TIA impedes federal jurisdiction. *Coleman* discussed the foreclosed taxpayer's property interest in surplus proceeds when considering whether Coleman had stated a claim for a violation of the Takings Clause, not whether the TIA barred the suit. *See Coleman*, 70 F. Supp. 3d at 77–80. Although *Coleman* is only persuasive authority, the

logic of *Coleman*—that the TIA does not bar a takings suit in federal court where a taxpayer seeks to recover only after-tax equity—applies with equal import in this case as well.

Lastly, the Michigan Attorney General cites *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377 (6th Cir. 2017), in support of its contention that the TIA bars federal jurisdiction in this case. In *Islamic Center*, we rejected a religious organization's attempt to side-step the TIA. *Id.* at 382–83. In rejecting the taxpayer's argument that the TIA did not apply, we held that even though the religious organization had already paid the tax it owed, its lawsuit still directly challenged the assessment of a tax because the organization sought "a court order that would allow it (and others) to avoid a *future* tax." *Id.* at 383 (emphasis added). In this case, however, Freed is not seeking a declaration that Michigan's tax collection procedures are unconstitutional nor is he seeking to avoid collection of a *future* tax. Instead, he challenges the State's post-collection tax refund procedures, or lack thereof. This distinguishes the present case from *Islamic Center*.

In sum, the TIA does not bar federal jurisdiction in this case. Freed is not challenging the State's assessment, levy, or collection of a tax. Rather, Freed asserts that the State took his property—the surplus sale proceeds and excess equity—after collecting his tax debt without providing just compensation. As a result, the TIA does not bar this suit from proceeding in federal court.

## B.

*Doctrine of comity.* Similarly, the principle of comity between the federal courts and state governments does not bar this suit in federal court because Freed does not challenge the validity of Michigan's tax system.

The principle of comity is an independent doctrine that "prohibits 'taxpayers . . . from asserting § 1983 actions against the validity of state tax systems in [the lower] federal courts.'" *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004) (alterations in original) (quoting *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981)). While the principle of comity is a practice of abstention, and is not jurisdictional, the Supreme Court has "long recognized that principles of federalism and comity generally counsel that [federal]

courts should adopt a hands-off approach with respect to state tax administration." *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 586 (1995).

But here, the principle of comity does not bar Freed's suit because, as previously discussed, Freed does not challenge Michigan's taxing authority or the validity of Michigan's tax system. A favorable outcome for Freed in this suit will not prevent Michigan from foreclosing on and selling property to recover delinquent taxes.

The Michigan Attorney General argues that Freed's claims "not only attempt to frustrate state tax collection, the entire tax statute collapses under Plaintiff['s] theory." But that appears to be hyperbole. To the extent that this suit does impose negative consequences on Michigan's tax scheme, those consequences will be indirect and more related to Michigan's tax refund procedures.

Lastly, takings suits in federal courts to recover excess equity as a result of state tax foreclosure sales do not violate the principle of judicial federalism. The Civil Rights Act of 1871 expressly provides a federal cause of action to litigants who feel that a state or local official has violated their rights under the United States Constitution. *See* 42 U.S.C. § 1983. Thus, "since the Civil Rights Act of 1871, part of 'judicial federalism' has been the availability of a federal cause of action when a local government violates the Constitution." *Knick*, 139 S. Ct. at 2177 n.8. As a result, Freed may invoke the protection of the federal courts to seek compensation for an alleged unconstitutional taking by a local government in violation of the Fifth Amendment.

In conclusion, the principle of comity does not prevent this suit from proceeding in federal court because Freed is not challenging the validity of Michigan's tax procedures in this lawsuit. True, Freed's lawsuit arises as an ancillary result of and is related to Michigan's tax foreclosure scheme. But, at bottom, Freed's suit seeks compensation from an alleged unconstitutional taking and excessive fine. Ultimately, Freed's claims, which allege federal constitutional violations by state and local officials, are precisely the type of claims that are authorized under Section 1983. As such, this suit may proceed in federal court.

C.

*Impact of the* Wayside Church *decision.* We must also consider the difficult question of whether we are bound by the majority's discussion of the TIA and comity in *Wayside Church*, 847 F.3d at 822–23. Despite a thoughtful dissent, we conclude that the discussion about the TIA and comity in *Wayside Church* is most appropriately construed as persuasive dictum.

"Like most circuits, this circuit follows the rule that the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court." *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019). "But only *holdings* are binding[,]" and one panel of the Sixth Circuit is not bound by dictum in an earlier published panel opinion. *Id.* at 700; *see also BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 750 (6th Cir. 2010).

How do we determine whether discussion in a published opinion constitutes a binding holding as opposed to persuasive dictum? Definitions are helpful. A "holding" is "[a] court's determination of a matter of law pivotal to its decision." *United States v. Hardin*, 539 F.3d 404, 438 (6th Cir. 2008) (Batchelder, J., concurring in part and dissenting in part) (citing Black's Law Dictionary (8th ed. 2004)). And dictum is anything "not necessary to the determination of the issue on appeal." *United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003).

Still, "the line between [a] holding and dictum is not always clear." *Metro. Hosp. v. United States Dep't of Health & Hum. Servs.*, 712 F.3d 248, 274 (6th Cir. 2013) (McKeague, J., dissenting) (emphasis omitted). "Holding and dictum are generally thought of as mutually exclusive categories. However, it is not always immediately apparent at a glance whether a pronouncement of law is holding or dictum. One cannot tell by reading the statement in isolation, without reference to the overall discussion." Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1257 (2006). "What separates holding from dictum is better seen as a zone, within which no confident determination can be made whether the proposition should be considered holding or dictum." *Id.* at 1258.

Of course, as the dissent correctly notes, alternative holdings are not dicta. On the other hand, just because a court presents a statement as an alternative holding does not necessarily mean that the statement is entitled to adherence as binding precedent. "[D]ictum is not converted

into holding by forceful utterance, or by preceding with the words 'We hold that . . . .'" Leval, *supra*, at 1257. "A judge's power to bind is limited to the issue that is before him; he cannot transmute dictum into decision by waving a wand and uttering the word 'hold.'" *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring). Thus, we must look carefully at the conclusion the *Wayside Church* majority made on the TIA and comity and consider that conclusion in reference to the overall discussion in the opinion and in relation to the ultimate judgment of the court.

The primary holding of *Wayside Church* was that the district court lacked subject-matter jurisdiction over the action based on the *Williamson County* ripeness doctrine because adequate state procedures existed in which the plaintiff could challenge the alleged unconstitutional taking in state court. *Wayside Church*, 847 F.3d at 818–22. That holding alone entitled the *Wayside Church* majority to reverse the district court's judgment.

But the majority continued. The *Wayside Church* majority also stated "that the district court erred in finding that the claims were not barred by the Tax Injunction Act and the doctrine of comity, and as a result, mistakenly determined that it could exercise subject matter jurisdiction over Plaintiffs' claims." *Id.* at 822–23.

At first glance, the latter statement appears to be an alternative holding, since it seems that the TIA and comity could constitute an "independent" or "equally sufficient conclusion" in support of the judgment of reversal. *See Wright*, 939 F.3d at 701. But here, *Wayside Church*'s primary holding, that federal courts lacked subject-matter jurisdiction over the action based on *Williamson County*, undermined the majority's ability to make any alternative holdings. If we take the *Wayside Church* majority at its word that, at the time of writing, subject-matter jurisdiction was lacking in federal court based on *Williamson County*, then the majority did not have jurisdiction to reach a conclusion on whether the TIA or doctrine of comity also precluded the case from proceeding in federal court.[1] Ultimately, "[w]ithout jurisdiction the court cannot

---

[1]Of course, the Supreme Court's decision in *Knick* overruled the *Williamson County* ripeness doctrine, which the *Wayside Church* majority relied on in reaching its jurisdictional holding. *See Knick*, 139 S. Ct. at 2179. Still, at the time of decision, the only legal conclusion that was necessary to the judgment in *Wayside Church* was that *Williamson County* required the plaintiff to bring a takings claim in state court in the first instance if adequate state court remedies existed.

proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*, 74 U.S. 506, 514 (1868) (internal quotation marks omitted)).  As a result, once the *Wayside Church* majority concluded in its primary holding that it lacked jurisdiction, it no longer had the power to declare law, and any further conclusions constituted dicta.

Nor does it matter that the *Wayside Church* majority's conclusion on the TIA and comity appears to be an alternative conclusion about whether subject-matter jurisdiction existed. Of course, "a federal court always has jurisdiction to determine its own jurisdiction."  *United States v. Ruiz*, 536 U.S. 622, 628 (2002).  But here, the *Wayside Church* majority had already determined that it lacked jurisdiction before it proceeded to analyze the TIA and doctrine of comity.  No further analysis on jurisdiction was necessary to the judgment of reversal.

Moreover, the discussion on the TIA and comity in *Wayside Church* exposes the hazard presented by alternative holdings.  It is true that the *Wayside Church* majority considered whether the TIA and comity barred the suit.  Even so, as the dissent acknowledges, to conclude that the majority reached a conclusion about the TIA and comity, one must necessarily infer that the panel also concluded that Michigan procedures qualified as a levy or collection of taxes.  But that supports finding that the *Wayside Church* discussion on the TIA and comity constitutes dictum.  There is no substantive analysis in *Wayside Church* about whether the Michigan procedures, which are identical to the procedures at issue in this case, constitute an assessment, levy, or collection or taxes under the TIA.  *See* 847 F.3d at 822–23.  In fact, the majority never explicitly concluded that the Michigan procedures constituted an assessment, levy, or collection of taxes.  *See id.*  As such, it is not "*clear* that the court . . . *consciously*[2] reached a conclusion about" whether the Michigan procedures qualified as a levy or collection of taxes under the TIA where subsequent readers must infer that the court reached such a conclusion without any substantive analysis.  *Wright*, 939 F.3d at 702 (emphasis added).  The issue is not that the TIA

---

[2]Conscious means "perceiving, apprehending, or noticing with a degree of controlled thought or observation."  *Conscious*, Merriam-Webster's Collegiate Dictionary 265 (11th ed. 2014); *see also Consciously*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/consciously (last visited Sept. 2, 2020) (defining the adverb consciously as "in a way that is determined or intentional").

and comity issue were merely lurking in the record in *Wayside Church*; instead, the problem with the majority's conclusion on the TIA and comity is that it is not clear that the majority consciously reached a conclusion about whether a taxpayer bringing a takings challenge arising only from excess foreclosure sale proceeds and equity is challenging state tax levy, collection, or administration.

Finally, while not dispositive on the issue, it appears that the *Wayside Church* dissent understood the majority's holding to be that under *Williamson County* "plaintiffs [] must seek a remedy in state court rather than federal." *See Wayside Church*, 847 F.3d at 823 (Kethledge, J., dissenting).

In sum, the *Wayside Church* majority's discussion on the TIA and comity is most appropriately treated as dictum since the court concluded in its primary holding that it lacked jurisdiction based on *Williamson County*. Furthermore, it is not clear that the majority consciously considered whether Michigan procedures constituted an assessment, levy, or collection of taxes under the TIA. As a result, even if the *Wayside Church* majority's conclusion on the TIA and comity constitutes "judicial" or "considered dictum," which is entitled to considerable weight, *see Metro. Hosp.*, 712 F.3d at 274, it is nonetheless nonbinding dictum.

D.

*Plain, adequate, and complete remedies in state court.* Having found that neither the TIA nor principles of comity prevent the exercise of federal jurisdiction in this case, we need not consider whether Michigan courts afford aggrieved taxpayers with "plain, adequate, and complete" remedies to challenge allegedly unconstitutional takings. *See Fair Assessment*, 847 F.3d at 116. We would only consider whether adequate state-court remedies exist if we had found that either the TIA or comity counsel that we abstain from exercising federal jurisdiction.

Additionally, the recent Michigan Supreme Court decision in *Rafaeli II*, 2020 WL 4037642, ___ N.W.2d ___ (Mich. 2020), does not aid us in resolving this appeal. In *Rafaeli II*, the Michigan Supreme Court reversed a Michigan Court of Appeals decision holding that government keeping surplus equity from a tax delinquency sale did not amount to an unconstitutional taking. *See Rafaeli I*, No. 330696, 2017 WL 4803570 at *3–4 (Mich. Ct. App.

Oct. 27, 2017). On review, the Michigan Supreme Court held that a local government's "retention of . . . surplus proceeds under the GPTA amounts to a taking of a vested property right requiring just compensation." *Rafaeli II*, 2020 WL 4037642, at *21. Additionally, the *Rafaeli II* court determined that just compensation required the government to return the difference between the foreclosure sale price and the taxes, interest, penalties, and fees owed. *Id.* at *24–25. Still, the Michigan Supreme Court's resolution of *Rafaeli II* is only relevant to determining whether plain, adequate, and complete remedies exist for plaintiffs to bring takings claims in Michigan state courts. And here, we do not consider whether adequate remedies exist here since we find that neither the TIA nor comity bar federal jurisdiction in this case.[3]

E.

*Summary judgment*. We decline Freed's invitation for this court to render a decision on the merits of his claims. While this court has exercised discretion to decide issues on appeal that were not addressed by the district court, *see Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017), "typically," we "will not address issues unless ruled upon by the trial court below." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554–55 (6th Cir. 1998) (citation omitted).

Here, remand is appropriate. The district court did not directly address the merits of Freed's constitutional claims. Additionally, the trial court is in the best position to resolve any dispositive issues on the merits in the first instance because it is most familiar with the factual and procedural background of this action.

---

[3]In a Federal Rule of Appellate Procedure 28(j) letter, Freed argues that *Rafaeli II* demonstrates that Michigan courts do not offer complete or adequate remedies because, although keeping surplus foreclosure sale proceeds constitutes a taking under the Michigan Constitution, *Rafaeli II* held that the appropriate calculation of just compensation is the difference between the foreclosure sale price and the amount of taxes and fees owed. Freed contends that he will only be afforded complete and adequate remedies if he can recover the difference between the fair market value of his property and the taxes owed.

But we need not consider this argument. At this juncture, since we do not resolve the merits of Freed's takings claim, determining whether Michigan courts offer Freed a complete or adequate remedy based on the calculation of just compensation would be premature and amount to an advisory opinion. On remand, if the district court finds an unconstitutional taking occurred, it may then consider the parties' arguments on the appropriate remedy for the constitutional violation.

IV.

The district court's dismissal based on the *Williamson County* ripeness doctrine must be reversed considering the Supreme Court's decision in *Knick*, which overruled *Williamson County*'s requirement that litigants pursue takings challenges in state court before bringing a suit in federal court. Additionally, neither the TIA nor the principle of comity preclude this suit from proceeding in federal court because Freed is not challenging state tax collection or administration. As a result, the district court's judgment is **REVERSED,** and this case is **REMANDED** for further proceedings.

———————————

**DISSENT**

———————————

LARSEN, Circuit Judge, dissenting.  The majority ably explains why the Tax Injunction Act (TIA) and the doctrine of comity should not apply in this case.  Freed's takings claim does not turn on the validity or amount of any tax—or even how it is collected.  Instead, it turns on whether a Michigan county can collect its tax and then retain a windfall from its tax foreclosure sale of Freed's home.  As the majority demonstrates, requiring the government to pay for this alleged taking would not deplete any *tax* money from Michigan's coffers.  Nor would recognizing a post-collection takings claim restrain Michigan from foreclosing on property owners in the future to collect delinquent taxes.  In that respect, this is not a tax case at all.

Nevertheless, I must respectfully depart from the resolution reached by my friends in the majority.  Whether we agree with the decision or not, I believe we are bound by *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017).  *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) (explaining our prior-panel-precedent rule).  There, as in this case, the plaintiffs had failed to pay property taxes on their real property in Michigan.  *Wayside Church*, 847 F.3d at 815.  Pursuant to Michigan's General Property Tax Act (GPTA), MCL § 211.1 *et seq.*, the real property then became subject to forfeiture and foreclosure.  *Id.*  The defendant counties kept the surplus proceeds from the foreclosure sales and the plaintiffs, like Freed, got nothing.  *Id.*  The plaintiffs responded as Freed has by bringing takings claims under 42 U.S.C. § 1983 in federal court.  *Id.* at 816.  And just as here, the plaintiffs challenged neither the process by which the asserted property interests were taken nor the validity or amount of any tax owed; they sought only a return of the "surplus proceeds" from the sale.  *Id.* at 815.

The *Wayside Church* majority held that the district court erred in exercising jurisdiction. *Id.* at 823.  And it based that decision on two independent grounds.  First, it concluded the plaintiffs' claims were not ripe for review under *Williamson County*.  *See id.* at 817–22; *Williamson Cty. Reg'l Planning Comm's v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194

(1985). That first portion of the opinion is of course no longer good law following *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019), which explicitly overruled *Williamson County*.

But the second basis for the decision survives. *Wayside Church* also "conclude[d] that the district court erred in finding that the claims were not barred by the Tax Injunction Act and the doctrine of comity." 847 F.3d at 822–23. "[A]s a result," we held that the district court "mistakenly determined that it could exercise subject matter jurisdiction over Plaintiffs' claims." *Id.* at 823. Because this case is indistinguishable from *Wayside Church*, I believe we are bound by that holding even though, as the majority points out, the ripeness determination in *Wayside Church* was sufficient to support the court's judgment. This is because "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949); *see Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019); *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 202 (6th Cir. 2016). And I cannot see why this rule would apply differently when the alternative holdings are jurisdictional, or why it would matter which jurisdictional question the court chose to address first. *See Nicholson v. Shafe*, 558 F.3d 1266, 1272 n.6 (11th Cir. 2009) (concluding an alternative jurisdictional holding set forth in a footnote at the end of a prior opinion was "not dicta").

That said, this case presents a closer question than most cases involving alternative holdings. Here, we confront not only holdings in the alternative, but one that might be mistaken for a question merely "lurk[ing] in the record" of our prior decision and, thus, not entitled to precedential effect. *See Wright*, 939 F.3d at 702. It is true, as both the majority and amicus point out, that *Wayside Church* did not explain why the Michigan procedures at issue here qualified as a "levy" or "collection" of a tax within the meaning of the TIA. *Wayside Church* instead directed its focus to whether an *exception* to the TIA's jurisdictional bar applied—that is, the lack of a "plain, speedy and efficient" remedy in state court. *See Wayside Church*, 847 F.3d at 822–23. But the court did set forth the express language of the statute and, in circumstances factually indistinguishable from those presented here, concluded that "the Tax Injunction Act and comity [were] at play." *Id.* at 822. And, critically, the only way *Wayside Church* could have "conclude[d] that the district court erred in finding that the claims were not barred by the Tax Injunction Act"—as it did—was to conclude that the Michigan procedures qualified as a levy or

collection of a tax.  I believe that determination binds us.  For unlike those cases where a jurisdictional problem "merely lurk[ed] in the record, neither brought to the attention of the court nor ruled upon," *Wright*, 939 F.3d at 702 (quoting *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006)), the precise issue presented here was briefed to the court in *Wayside Church*, *see* Appellant Br., 2016 WL 4010403, at *22–*24; Appellee Br., 2016 WL 4238713, at *11–*12. And the court must have "considered the issue and consciously reached a conclusion about it." *Wright*, 939 F.3d at 702.  Otherwise it could not have faulted the district court for exercising jurisdiction despite the TIA.

Accordingly, I agree with the district court that *Wayside Church* is controlling. Following that decision, the district court correctly dismissed Freed's suit so long as the Michigan state courts would afford Freed "a plain, speedy and efficient remedy."  28 U.S.C. § 1341.  *Wayside Church* held squarely that they would.  *See* 847 F.3d at 820–22.  And the Michigan Supreme Court has only strengthened that conclusion with its recent holding that a county's retention of surplus proceeds above any tax delinquency works an unconstitutional taking under the state constitution.  *Rafaeli, LLC v. Oakland Cty.*, No. 156849, 2020 WL 4037642, at *21 (Mich. July 17, 2020).  This, the Michigan Supreme Court held, was consistent with the state's longtime recognition of a landowner's right to "surplus proceeds from the tax-foreclosure sale of his or her property," reversing a lower court decision to the contrary.  *Id.* at *19–*20.  Thus, the Michigan state courts have and continue to provide a plain, speedy, and efficient remedy for Freed's claim.  *See Wayside Church*, 847 F.3d at 822.

Freed counters that he does not have a complete remedy in the Michigan courts because the Michigan Supreme Court equated "just compensation" under its own constitution with the amount of "surplus proceeds generated from the tax-foreclosure sale," rather than the full "fair market value," which he contends the federal Constitution guarantees.  *See Rafaeli*, 2020 WL 4037642, at *24; *see also id.* at *26 (Viviano, J., concurring).  Even if he is right about the merits,[1] that would have no bearing on the jurisdictional question.  The Supreme Court has held

---

[1] The "likelihood of plaintiff's success" on the merits "in the state court is not a factor to be considered when determining whether the jurisdictional prohibition of [the TIA] applies."  *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007) (citation omitted); *see also Wilson v. Bredesen*, 113 F. App'x 70, 73 (6th Cir. 2004) ("[T]he state-court 'remedy' to which the Tax Injunction Act refers is not a victory for the litigant but merely

that to bar federal jurisdiction, the TIA only "require[s] a state-court remedy that meets certain minimal *procedural* criteria." *Rosewell v. La Salle Nat'l Bank*, 450 U.S. 503, 512 (1981). The Michigan state courts afford Freed "a full hearing and judicial determination at which [he] may raise any and all [federal] constitutional objections" to Michigan's scheme, with "review . . . ultimately available in" the U.S. Supreme Court. *Id.* at 514 (internal quotation marks omitted); *see Wayside Church*, 847 F.3d at 821. That is all that is required. *Rosewell*, 540 U.S. at 514. Freed's "substantive concern" with his remedy is immaterial to the district court's jurisdiction under the TIA. *Id.* at 515; *see Nw. Airlines v. Tenn. State Bd. of Equalization*, 11 F.3d 70, 73 (6th Cir. 1993); *Pegross v. Oakland Cty. Treasurer*, 592 F. App'x 380, 387 (6th Cir. 2014).

\* \* \*

Because I agree with the district court that *Wayside Church* binds us, I respectfully dissent.

---

an opportunity to obtain relief—with review by the United States Supreme Court on the horizon when relief is denied.").